IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02883-RM-STV

JACK SMITH,

    Plaintiff,

v.

ROBERT S. DAVIS, MD; ANIMAS AND
SOUTHWEST COLORADO SPINE AND
SURGICAL HOSPITAL d/b/a ANIMAS SURGICAL
HOSPITAL; and RUSSELL HILL, MD,

    Defendants.
_____

**ORDER REGARDING EX-PARTE INTERVIEWS WITH
NON-PARTY TREATING PROVIDERS**
_____

Entered By Magistrate Judge Scott T. Varholak

    Pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), this Court has authority to hear and resolve the Parties' discovery dispute over whether counsel for Defendants may speak to and meet with Plaintiff's non-party treating providers outside the presence of Plaintiff's counsel.

**I.    BACKGROUND:**

    This case arises out of Plaintiff's medical malpractice claims against neurosurgeon Robert Davis, M.D., emergency medicine physician Russell Hill, M.D., and Animas Surgical Hospital, LLC. Defendants sought leave of court to meet with some of Plaintiff's medical care providers without the presence of Plaintiff's counsel. The parties submitted a Joint Position Statement for the Court's review, outlining the medical providers with whom Defendants sought to meet, and the parties' respective positions on the issue. The Parties also submitted medical records from the providers at issue.

    The Court conducted a hearing on Defendants' request on February 14, 2019. [#32] At that time, the Court heard argument from attorneys for all parties regarding whether counsel for Defendants could meet with the following medical providers:

      a.      William Finn, M.D.
      b.      Kennard Stradling, M.D.
      c.      Jay Johnson, M.D.
      d.      Patrick McLaughlin, M.D.
      e.      John McManus, M.D.
      f.      Jennifer Rupp, M.D.
      g.      Sara Scherrer, M.D.
      h.      Yasuaki Harasaki, M.D.
      i.      Douglas G. Orndorff, M.D.
      j.      Amir Abtahi, M.D.

Plaintiff did not object to meetings with Dr. Stradling or Dr. Johnson. With respect to the remaining physicians, Plaintiff claimed the physician-patient privilege prevented Defendants' counsel from speaking to the above-mentioned providers. Defendants claimed the physician-patient privilege had either been waived or was subject to an exception under Colorado's privilege statute. *See* Colo. Rev. Stat. § 13-90-107(d).[1] Plaintiffs additionally claimed that, even if the privilege was waived or is inapplicable, there remained a danger that the treating providers would divulge residually privileged information and Defendants' counsel would unduly influence the non-party treating providers if allowed to meet with them without Plaintiff's counsel present.

## II. **LEGAL STANDARD:**

Litigants may obtain discovery regarding any matter that is relevant to the party's claim or defense, so long as the discovery sought is proportional to the needs of the case and the information to be discovered is not privileged. Fed. R. Civ. P. 26(b)(1). Colorado recognizes a physician-patient privilege, under which a physician "shall not be examined without the consent of his or her patient" regarding information acquired during the course of care which is necessary to provide treatment to that patient. Colo. Rev. Stat. § 13-90-107(d).

There are circumstances to which this privilege does not apply. If a patient sues her physician "on any cause of action arising out of or connected with . . ." the physician's care or treatment of that patient, then the privilege does not apply to the defendant physician. *Id.* § 13-90-107(d)(I). Additionally, the privilege does not apply to non-party treating providers who were "in consultation with" a defendant physician for the care at issue in the lawsuit. *Id.* § 13-90-107(d)(II). Non-party medical providers are "in consultation" with the defendant providers if they "collectively and collaboratively assess

---

[1] The Parties did not raise the issue of whether this dispute was governed by Colorado law. *See Felder v. Casey*, 487 U.S. 131, 151 (1988) (applying *Erie* doctrine to state-law claims heard pursuant to supplemental jurisdiction); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Because the Parties rely on Colorado law for the applicability of privilege, the Court will likewise rely on Colorado law for the applicability of privilege in this action.

2

and act for a patient by providing a unified course of treatment," resulting in integrated care of the patient. *See Bailey v. Hermancinski*, 413 P.3d 157, 160, 161-62 (Colo. 2018); *Reutter v. Weber*, 179 P.3d 977, 980-82 (Colo. 2007).

Outside of the statute, Colorado has recognized the physician-patient privilege can be waived. The privilege can be expressly waived by "words or conduct." *See Clark v. Dist. Ct.*, 668 P.2d 3, 8 (Colo. 1983). Additionally, it can be implicitly waived by putting medical conditions at issue in a lawsuit. *See id.*; *Samms v. Dist. Ct.*, 908 P.2d 520, 524-25 (Colo. 1995); *Bailey*, 413 P.3d at 162.

Colorado has adopted a burden-shifting framework when the physician-patient privilege is challenged under both the statute's exceptions and the implied waiver doctrine. First, the "proponent of a claim of privilege bears the burden of establishing that the privilege applies," which in turn requires the proponent to "establish that the exception itself is inapplicable." *Bailey*, 413 P.3d at 161. Once a privilege is established, the burden shifts to the opponent to demonstrate the privilege has been waived. *Id.* at 163. If waiver is established, the burden returns to the proponent to show there is a high risk of discovering "residually privileged information" (*i.e.*, information which was not implicitly waived), and a risk of undue influence over the non-party treater if *ex parte* meetings are permitted. *See id.*; *Reutter*, 179 P.3d at 979 ("[A]llowing the plaintiff to attend the interview is the preferred measure where there is a high risk that the residually privileged information will be divulged.").

## III. ANALYSIS

Defendants first contend that Plaintiff's physician-patient privilege with Dr. Finn, Dr. McManus, and Dr. Scherrer does not apply because these physicians were in consultation with Defendant Robert Davis, M.D. Specifically, Defendants argue these three physicians all participated in a unified course of treatment with Dr. Davis to diagnose and treat Plaintiff after the September 12, 2016 surgery at issue in this lawsuit. *See Reutter*, 179 P.3d at 981 (defining "in consultation with" to mean "collectively and collaboratively assess[ing] and act[ing] for a patient by providing a unified course of medical treatment"); *see also Bailey*, 413 P.3d at 161-62 (holding that non-party medical providers are "in consultation" with a defendant provider if they provide integrated care of the plaintiff-patient along with the defendant). Defendants point to Dr. Davis' addendum to his October 11, 2016 note as well as Dr. Finn's October 14, 2016 note to demonstrate consultation between the physicians around the time Plaintiff's alleged infection was discovered.

Defendants additionally contend Plaintiff waived the physician-patient privilege that would normally attach to information obtained by the physicians identified above, because they saw him solely for the conditions that Plaintiff has put at issue in this lawsuit. Therefore, they argue, there is no privilege that could attach to the information in possession of these physicians. Moreover, Defendants contend there has been an

express waiver of any privilege in possession of these providers. Plaintiff has produced the medical records for all of the physicians identified above without any redactions, and has not provided a privilege log for any information in possession with the identified providers. In addition, Plaintiff's former counsel provided Dr. Davis' counsel with blank medical record releases signed by Plaintiff.

Plaintiff contends that Dr. McManus, Dr. Scherrer, and Dr. Finn were not "in consultation with" Dr. Davis because there is no evidence that those providers engaged in integrated care of Plaintiff with Dr. Davis as required by *Bailey*, and thus argues that the "in consultation" exception does not apply to these treatment providers. With respect to implicit waiver, Plaintiff does not dispute his implicit waiver of the privilege with respect to the medical conditions at issue in this lawsuit—his back pain, back surgeries, infection, and related treatment. Instead, Plaintiff claims residually privileged information exists with all the providers at issue in this dispute, which preclude the requested *ex parte* interviews.

The Court finds there is a substantial risk that Dr. Finn possess residually privileged information. Dr. Finn was Plaintiff's primary care physician for at least a year. Although there are limited medical records before the Court, it is reasonable to assume that, in his role as a primary care physician, Dr. Finn came across residually privileged information during his care and treatment of Plaintiff. The very nature of primary care concerns a broad host of medical issues, which likely encompassed areas beyond Plaintiff's back, surgeries, and infection. The Court will therefore not allow *ex parte* meetings between Defendants and Dr. Finn.[2]

However, the Court will allow *ex parte* meetings between Defendants and the remaining physicians, subject to the parameters set forth below. The Court concludes Plaintiff put his back condition, infection, surgeries, and related treatment at issue, and by doing so, waived his physician-patient privilege with respect to these medical issues. Moreover, Plaintiff appears to have expressly waived his physician-patient privilege as he provided Dr. Davis' counsel with blank, medical record releases. Because Drs.

---

[2] During the discovery hearing, counsel for Animas Surgical Hospital, LLC made an additional argument with respect to Dr. Finn. Dr. Finn is a PRN employee of the hospital, and as an employee, counsel argued the attorney-client privilege with Animas Surgical Hospital applied to allow counsel to speak to Dr. Finn *ex parte*. Animas Surgical Hospital acknowledged the attorney-client privilege appeared to clash with the physician-patient privilege. Although Colorado has apparently not resolved whether one privilege prevails over the other, counsel directed this Court to foreign authority for guidance on how to resolve the conflict between the competing privileges. The Court declines to rule on this particular dispute as it was not raised in the Joint Position Statement prior to the discovery hearing. However, the Court is willing to address this argument in a subsequent discovery dispute. For now, the Court will not allow *ex parte* meetings between Defendants and Dr. Finn.

4

McLaughlin, Stradling, Johnson, McManus, Rupp, Scherrer, Harasaki, Orndorff, and Abtahi all saw Plaintiff solely for conditions at issue in this lawsuit, the Court concludes Defendants have met their burden of establishing waiver of the physician-patient privilege. *See Bailey*, 413 P.3d at 163.

Additionally, the Court finds there is not a high risk that these physicians possess residually privileged information. In fact, it is highly unlikely they possess residually privileged information aside from preliminary information contained in entrance records (which itself may have been waived due to the aforementioned production of medical records and provision of blank medical record releases). The medical records before the Court show each of the physicians, including Dr. McLaughlin, specifically saw Plaintiff for the very conditions at issue in this lawsuit.

Whatever possible risk of divulging residually privileged information remains, based on the providers' possible access to Plaintiff's broader medical records, is outweighed by the general interests in maintaining the attorney work product privilege and developing litigation strategy. *See Samms*, 908 P.2d at 524; *see also id.* at 530-31 (Kourlis, J., concurring). Moreover, this possible risk is mitigated by the parameters placed on the *ex-parte* interviews, as discussed below.

Last, the Court is unconvinced Defendants' attorneys will exert undue influence on the physician witnesses for several reasons. First, physicians are sophisticated witnesses. Second, the proposed witnesses are not litigants. Third, attorneys are constrained by their own ethical obligations to conduct witness interviews in an appropriate manner. *See Samms*, 908 P.2d at 528. Therefore, the Court concludes any undue influence is unlikely to occur if Defendants' counsel are permitted to meet with the proposed witnesses *ex parte*.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED**:

(1) Defendants shall not conduct *ex parte* meetings with William Finn, M.D. Should the parties wish to address Animas' argument about attorney-client privilege with respect to Dr. Finn, the parties should follow the Court's Civil Practice Standards and set the dispute for another discovery dispute hearing.

(2) Defendants may meet with and interview Drs. McLaughlin, Stradling, Johnson, McManus, Rupp, Scherrer, Harasaki, Orndorff, and Abtahi outside the presence of Plaintiff's counsel, subject to the following parameters:

    (a) Questions will be limited to the providers' involvement in treating Plaintiff's back, infection, and care arising from attempts to fix any complications that arose from the September 12, 2016 surgery;

5

(b) Questions will be limited to medical records already in Defendants' possession, or produced throughout the course of discovery in this litigation; and

(c) The physicians shall not review electronic medical records in advance of any meeting with Defendants' counsel. Instead, the physician will only discuss records that defense counsel provides to the physician during the meeting and/or interview.

This Order merely permits defense counsel to contact, interview, and meet with the above-mentioned physicians outside the presence of Plaintiff and his attorney. This Order does not require any physician to meet with and speak to defense counsel, as such an interview is voluntary and entirely up to the physician. Moreover, this Order does not make any finding or suggestion about a physician's independent obligations, such as whether communications comport with HIPAA.

DATED: March 5, 2019

BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge