**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-02883-STV

JACK SMITH,

    Plaintiff,

v.

ROBERT S. DAVIS,

    Defendant.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

This matter is before the Court on Defendant's Motion to Limit Testimony of Mitchell Blass, M.D. Pursuant to C.R.S. § 13-64-401 and Fed. R. Evid. 702 ("Defendant's Motion") [#70], and Plaintiff's Motion to Limit the Testimony of Wendy Gill, M.D. Pursuant to C.R.S. § 13-64-401 and Fed. R. Evid. 702 ("Plaintiff's Motion") [#71] (collectively, the "Motions"). The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [## 54, 55] The Court has carefully considered the Motions and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motions.[1]  For the following reasons, Defendant's Motion is **GRANTED in part and DENIED in part** and Plaintiff's Motion is **GRANTED in part and DENIED in part**.

---

[1] Additionally, neither party has requested a *Daubert* Hearing regarding these motions and the Court finds that none is necessary.

## I.  BACKGROUND

This matter arises out of a spinal surgery performed on Plaintiff Jack Smith by Defendant Dr. Robert S. Davis, a neurosurgeon, on September 12, 2016. [#3 at ¶¶ 2, 10] Following the surgery, Plaintiff exhibited a number of symptoms, including wound drainage and "weakened condition and dizziness." [*Id.* at ¶¶ 11, 12, 14, 20] Plaintiff ultimately underwent additional surgeries and hospital stays for complications from a spinal infection and osteomyelitis. [*Id.* at ¶¶ 19-24] Plaintiff thereafter brought this action alleging negligence by Defendant in "failing to timely recogniz[e], assess, treat and care for Plaintiff's persistent lumbar pain and complications at the wound site resulting from [Defendant's] surgery."[2] [*Id.* at ¶ 28] Each party filed a motion to limit expert testimony on February 9, 2021 [## 70, 71], and the motions have been fully briefed [## 72, 73, 74, 75].

## II.  LEGAL STANDARD

The admissibility of expert testimony in federal courts is governed by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the

---

[2] This action was originally removed based upon a claim for violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA") against former Defendant Animas Surgical Hospital. [#1; *see generally* #52 at 1] Plaintiff eventually dismissed his claims against Animas Surgical Hospital [#36] and all that remains is a single state law negligence claim against Defendant Davis. [*See generally* ## 3, 34, 36, 39, 52] Nonetheless, the Court had supplemental jurisdiction over the negligence claim at the time the matter was filed and, in any event, the remaining parties are diverse and the amount in controversy exceeds $75,000. [#52 at 2]

>expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under this rule, the Court must "perform[ ] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). First, it must determine whether an expert is qualified, based on "knowledge, skill, experience, training, or education." *Estate of Grubbs v. Weld Cnty. Sheriff's Office*, 16-cv-00714-PAB-STV, 2018 WL 3145629, at *3 (D. Colo. June 26, 2018). Then, it "must assess whether the specific proffered opinions are reliable." *Id*. Rule 702 thus imposes on the district court a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). In this role, the Court must also ensure that the proffered expert testimony will assist the trier of fact. *See Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 156 (1999).

"[C]ourts are in agreement that Rule 702 mandates a liberal standard for the admissibility of expert testimony." *Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006) (citing *Daubert*, 509 U.S. at 588). Accordingly, the trial court has "broad discretion . . . both in deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir.2003); *see Kumho Tire*, 526 U.S. at 141-42. "Cross-examination and the presentation of contrary evidence continue to be appropriate means of challenging shaky but admissible evidence." *Davies v. City of Lakewood*, No. 14-cv-01285-RBJ, 2016 WL 614434, at *1 (D. Colo. Feb. 16, 2016). The proponent of the challenged

3

expert testimony has the burden of establishing admissibility. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (citing *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001)).

Although Rule 702 governs the admissibility of expert testimony, in state law matters "a witness's competency to testify regarding a substantive issue, such as the medical standard of care, is dictated by state law."[3] *Estate of Grubbs,* 2018 WL 3145629, at *6 (citing *McDowell v. Brown*, 392 F.3d 1283, 1295 (11th Cir. 2004); *see also* Fed. R. Evid. 601 ("[I]n a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision.")). Colorado Revised Statute § 13-64-401 governs the qualification of expert witnesses in medical malpractice actions in Colorado and is substantive in nature. *Panczner v. Fraser*, 374 F. Supp. 3d 1063, 1067 n. 3 (D. Colo. 2019). It states in relevant part:

> No person shall be qualified to testify as an expert witness concerning issues of negligence in any medical malpractice action or proceeding against a physician unless he not only is a licensed physician but can demonstrate by competent evidence that, as a result of training, education, knowledge, and experience in the evaluation, diagnosis, and treatment of the disease or injury which is the subject matter of the action or proceeding against the physician defendant, he was substantially familiar with applicable standards of care and practice as they relate to the act or omission which is the subject of the claim on the date of the incident. The court shall not permit an expert in one medical subspecialty to testify against a physician in another medical subspecialty unless, in addition to such a showing of substantial familiarity [with the applicable standard of care and practice], there is a showing that the standards of care and practice in the two fields are similar.

C.R.S. §13-64-401.

---

[3] Once again, the only remaining claim asserts negligence under Colorado law. *See supra* note 2. "When exercising jurisdiction over pendent state claims, [the Court] must apply the substantive law of the forum state . . . just as [it] would if [its] jurisdiction rested on diversity of citizenship." *Lytle v. City of Haysville*, 138 F.3d 857, 868 (10th Cir. 1998).

4

## III. ANALYSIS

The parties' motions to limit the testimony of expert witnesses in this matter deal with essentially the same issue: whether each side's infectious disease expert may opine on the standard of care for Defendant Davis, a neurosurgeon.[4] [*See generally* ## 70, 71] In his Motion, Defendant argues that Plaintiff's infectious disease expert, Dr. Mitchell Blass, is not qualified to testify as to Defendant's standard of care because Dr. Blass practices in a specialty different from Defendant. [#70 at 2] In his parallel Motion, Plaintiff argues that Dr. Blass's testimony is appropriate, but that if this Court limits his testimony, it should similarly limit the testimony of Defendant's infectious disease expert, Dr. Wendy Gill. [#71 at 2] The Court was provided with both experts' CVs and reports, as well as excerpts from Dr. Blass's deposition testimony. [## 70-1; 70-2; 70-3; 71-1; 71-2] Both sides argue for the limitation of the expert testimony under Rule 702 and Colorado's section 13-64-401. [##70, 81]

### A. Testimony Regarding the Neurosurgery Standard of Care

First, there does not appear to be a genuine dispute regarding whether Dr. Blass and Dr. Gill are qualified to testify as experts of neurosurgery—neither party argues that these experts are so qualified. [#72 at 4[5]; #73 at 4[6]] And indeed, the Court finds that neither party has made a showing that either doctor is qualified by license, skill,

---

[4] Neither party objects to the proposed testimony by each expert regarding causation. [##70, 71] And, in particular, neither party raises objections regarding the reliability of the proposed expert testimony, nor do they argue that it will not assist the trier of fact. [*Id.*]

[5] "Dr. Gill is not being offered to provide any opinions regarding the standard of care of a neurosurgeon. . . . Rather, Dr. Gill is endorsed to explain that there was no evidence of an infection between Plaintiff's surgery on September 12, 2016 and the culture identification approximately one month later." [#72 at 4]

[6] "Plaintiff will rely upon other experts to present testimony regarding the standard of care of a neurosurgeon." [#73 at 4]

knowledge, training, or experience in the field of neurosurgery. [*See* ## 70-2; 71-2]; *see also* Fed. R. Civ. P. 702. Similarly, neither party has made a showing that either Dr. Blass or Dr. Gill has a "substantial familiarity" with the standard of care applicable to a neurosurgeon, nor that the standards of care between neurosurgery and the treatment of infectious diseases are similar. C.R.S. § 13-64-401. The Court therefore finds that neither infectious disease expert is qualified to testify as to the standard of care for neurosurgery.[7] The Court will therefore turn to each party's objections to specific opinions offered by these experts.

### B. Plaintiff's Expert: Dr. Blass

Defendant does not dispute that Dr. Blass is qualified to render causation opinions regarding his specialty of infectious disease.[8] [#70 at 8] However, Defendant objects to what he refers to as "standard of care" opinions in Dr. Blass's report. [*See generally* #70]

At the outset, Defendant's Motion fails to comply with this Court's Practice Standards because it does not "identify with specificity each opinion the moving party seeks to exclude." STV Civil Practice Standards at 7. Instead, the Motion states only

---

[7] Courts in Colorado and this District have determined that a doctor may testify as to a general standard of care in the medical profession, even if she does not make a sufficient showing as to the similarity between, or her familiarity with, the standards of care of two different subspecialities. *Hall v. Frankel*, 190 P.3d 852, 859 (Colo. App. 2008) (finding that under C.R.S. § 13-64-401 an expert may testify to the "general standard of care common to the medical profession, . . . applicable to any physician."); *Panczner*, 374 F.Supp.3d at 1068 (same). However, neither side has argued that their expert intends to testify as to a general standard of medical care, so the Court does not assess whether either expert has made a sufficient showing on that ground.

[8] "Here, Defendant does not dispute Dr. Blass's qualifications to render causation opinions within the realm of his specialty of infectious disease. Rather, Defendant argues that Dr. Blass, as an infectious disease expert, is not qualified to render standard of care opinions against Defendant Dr. Davis, a neurosurgeon." [#70 at 8]

6

generally that Defendant objects to what he asserts are "standard of care opinions" and characterizes Dr. Blass's report as opining on Defendant's negligence and containing "opinions critical of [Defendant]." [#70 at 3, 4]  Defendant's Reply fairs better by identifying that Defendant objects to Dr. Blass's use of the terms "failures" and "poor wound management." [#74 at 2]  Defendant also objects to Dr. Blass's opinion that "[i]dentification and definitive therapy should have been recognized by [Defendant] as of October 4, 2016." [*Id.*]  Therefore, in the interest of clarifying issues before trial, and because some of the objections raised by Defendant are addressed by Plaintiff in his Response [#73 at 3], the Court will address these objections.

First, the Court finds that Dr. Blass is qualified to testify as an expert in infectious disease, based upon his "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.  Dr. Blass has been a licensed physician since 1992 and is board certified in internal medicine and infectious disease. [## 70-1 at 1; 70-2]  The Court further finds, and Defendant does not disagree, that Dr. Blass is qualified to opine regarding post-operative infections as an infectious disease specialist, although not as a surgeon. [*See* ##70 at 8; 70-2; 70-3 at 5(61:2-6) (deposition testimony stating Dr. Blass is involved with treating CSF leaks about three times per year)]; *see also Seeley v. Home Depot U.S.A., Inc.*, No. 17-cv-00584-PAB-NYW, 2018 WL 4275375, at \*8 (D. Colo. Sept. 7, 2018) (finding that expert doctor's experience treating the injury at issue qualified him to testify as to causation).  Finally, although not specifically challenged, the Court, in its gatekeeping role, finds that Dr. Blass has relied on sufficient data to satisfy the Court at this stage of the reliability of his opinions. *See Seeley*, 2018 WL 4275375, at \*10

("Experts frequently rely on secondary sources, such as medical records, . . . to develop opinions on causation.").[9]

The Court next turns to Defendant's objection to Dr. Blass's opinion that "[i]dentification and definitive therapy should have been recognized by [Defendant] as of October 4, 2016." [#70-1 at 3]  Defendant argues that Dr. Blass is not qualified to opine on what Defendant, a neurosurgeon, "should" have done.  Outside of the context of the testimony itself, the Court finds this statement somewhat ambiguous, as it may imply a standard of care assessment or a specialty-related opinion regarding the timing of the appearance of certain indicators.  However, the Court is sympathetic to Defendant's contention that the phrase identified may imply a standard of care opinion.  This Court has already found that Dr. Blass may not opine on the standard of care for neurosurgery.  [*See supra*, III.A.]  Therefore, to the extent this statement makes such an opinion regarding action Defendant "should" have taken, it shall be excluded.  However, to the extent that Dr. Blass seeks to testify regarding the existence of identifiable conditions by a certain date, that opinion shall be permitted.  *See Gasteazoro by and through Eder v. Catholic Health Initiatives Colorado*, 408 P.3d 874, 883-84 (Colo. App. 2014) (permitting expert doctor not qualified as to the standard of care to opine regarding the presentation of symptoms).

The Court makes the same finding as to Defendant's objections to phrases such as "poor wound management" and "failures."  Dr. Blass may not qualify his opinions in ways that impermissibly imply that Defendant failed to meet a neurosurgical standard of

---

[9] This finding does not preclude further objections at trial, nor does it relieve Plaintiff from his burden to prove the admissibility of his expert at trial.  *Nacchio*, 555 F.3d at 1241.

care, as he is not qualified to provide such an opinion. However, this does not preclude Dr. Blass from identifying the occurrence or absence of an action and thereafter describing how such course of action did or would have impacted Plaintiff's condition, so long as he "stays within the reasonable confines of his subject area" of infectious diseases. *Ralston*, 275 F.3d at 970 (quotation marks and citation omitted).[10]

### C. Defendant's Expert: Dr. Gill

Plaintiff, in his parallel motion, seeks to exclude standard of care opinions made by Defendant's infectious disease expert, Dr. Gill. [#71] Plaintiff's motion identifies one opinion contained in Dr. Gill's report that he argues contains an impermissible standard of care opinion. [*Id.* at 2] The contested opinion states:

> "[V]igilant monitoring without intervention is appropriate unless and until the quality of the drainage changes, or there is some other indication of infection. In this case, there were no signs or symptoms of infection that were missed or ignored while the patient was under [Defendant's] care."

[*Id.*; #71-1 at 4] Plaintiff argues that this statement opines on what a "reasonably careful neurosurgeon should have done in the same or similar situation as the defendant in treating and caring for the patient." [#71 at 2]

---

[10] Defendant also argues for the first time in his reply that he believes Dr. Blass has improperly relied upon the opinions of other experts by not citing those experts in his report. [#74 at 3] Because this argument is cursory and raised for the first time in the reply, the Court will not consider it. *See Tran v. Trustees of State Colleges in Colorado*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief are deemed abandoned or waived." (quotation omitted)). Additionally, Defendant makes this argument based upon a single statement in Plaintiff's Response: "Dr. Blass will also testify regarding the causal connection of failures identified [ ] by his colleagues and the injuries suffered by [Plaintiff]." [#73 at 4] The Court finds this statement to be ambiguous, as it may refer either to information relied on by Dr. Blass or to Plaintiff's broad trial strategy. The Court therefore does not have sufficient information by which to assess Defendant's contention. Defendant may renew his objection, if necessary, at trial.

As with Dr. Blass, this Court again makes a preliminary determination that Dr. Gill is qualified to testify as an expert in infectious disease, based upon her "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Dr. Gill has been a board certified infectious disease physician for over 10 years, maintains a full-time medical practice handling infection issues,[11] and has published within the field of infectious diseases. [## 71-1 at 1; 71-2]  Dr. Gill has also reviewed the medical records relevant to this matter. [*See* #71-1]  *See Seeley*, 2018 WL 4275375, at *10. At this time, therefore, the Court is satisfied that Dr. Gill may testify as an expert in infectious disease under Rule 702.[12]

As with Dr. Blass, the Court reiterates that Dr. Gill is not qualified to opine on the neurosurgical standard of care and may not qualify her opinions such that they impermissibly imply an opinion regarding the neurosurgical standard of care. [*See supra*, III.A.]  Accordingly, the first portion of the contested opinion[13] shall be excluded to the degree that it describes what a reasonably careful neurosurgeon should have done to care for the wound. However, Dr. Gill may give testimony that describes the signs and symptoms that indicate the presence of an infection—for example, change in drainage color. Dr. Gill is also qualified to opine regarding the existence, or lack thereof, of relevant medical symptoms of infection in this case, based upon her review

---

[11] Dr. Gill's expert report states: "My practice consists of patients with a broad range of infection issues including transplant-associated infections (solid organ and stem cell transplant), orthopedic infections, travel and tropical related infections, HIV, complex skin and soft tissue infections, and general infectious disease." [#72-2 at 1]

[12] This finding does not preclude further objections at trial, nor does it relieve Defendant from his burden to prove the admissibility of his expert at trial. *Nacchio*, 555 F.3d at 1241.

[13] "[V]igilant monitoring without intervention is appropriate unless and until the quality of the drainage changes, or there is some other indication of infection." [#71-1 at 4]

of relevant medical records.  See *Gasteazoro*, 408 P.3d at 883; *Ralston*, 275 F.3d at 970.  The second portion of the contested opinion is therefore admissible.

### D. Rule 403

Finally, both parties argue that standard of care opinions by the infectious disease experts should be excluded under Federal Rule of Evidence 403 as unfairly prejudicial, a waste of the Court's time, and cumulative.  [## 70 at 9; 71 at 3-4]  This Court has determined that neither expert is qualified to opine regarding the standard of care for neurosurgery and therefore does not reach this argument.

### IV. CONCLUSION

For the foregoing reasons, this Court **GRANTS in part and DENIES in part** Defendant's Motion to Limit Testimony of Mitchell Blass, M.D. Pursuant to C.R.S. § 13-64-401 and Fed. R. Evid. 702 [#70], and **GRANTS in part and DENIES in part** Plaintiff's Motion to Limit the Testimony of Wendy Gill, M.D. Pursuant to C.R.S. § 13-64-401 and Fed. R. Evid. 702 [#71].  Specifically, the Court **GRANTS** each motion to the extent they seek to generally exclude testimony by Dr. Blass and Dr. Gill regarding the neurosurgical standard of care.  The Court **DENIES** without prejudice each motion to the extent they seek to fully exclude specific opinions identified in the expert reports.  Dr. Blass and Dr. Gill may offer the challenged opinions in a manner consistent with the findings in this Order, and the Court reserves until trial ruling further on the proposed opinions.  The Court is confident that care by counsel and the experts in the expression of questions and answers, combined with robust cross examination, can alleviate confusion as to the scope of testimony.  See *Davies*, 2016 WL 614434, at *1, 7 (finding

12

that cross examination and phrasing of questions by counsel are appropriate controls for potentially objectionable expert testimony).

DATED:  April 19, 2021                                         BY THE COURT:

                                                              s/Scott T. Varholak
                                                              United States Magistrate Judge